Case 16-5189, et al. Marilyn Keepseagle, et al. v. Thomas J. Vilsack. Donovan Craig Tingle, silent class member, appellant. Mr. Sherman for the appellant, Mr. Sellers for the athletes. Thomas J. Vilsack, silent class member, appellant. Good morning, your honors. My name is William Sherman. At council table is my colleague, Gabrielle Hills, and appellant Craig Tingle. May it please the court, we represent class representative Keith Mandan, who was a class representative in the Keeps Eagle class of Native American farmers and ranchers. We appeal from the district court's order approving an addendum to the Keeps Eagle class action settlement agreement. The addendum authorizes the distribution of over $300 million money taken from the judgment fund for the purpose of settling the ECOA discrimination claims. Instead of having that money pay what we believe are the people who are entitled to it, those Native American ranchers and farmers who were injured by decades of discrimination by the USDA, the addendum approved by the lower court would result in over $300 million from the judgment fund going to charities who have no claims against the government and who were not injured by the alleged discrimination in the lawsuit. This is accomplished through a side prey provision in the settlement agreement. Side prey provisions, while they have not been explicitly approved, their use in this circuit, there are cases in which the district courts and the circuit has allowed the use of side prey to distribute residual or leftover funds from settlement agreements. However, I would suggest that in this instance, this is side prey run amok. We have a situation where what is represented is the $380 million, which is a majority of the fund, which were residual funds that were left as a result of the distribution process that was put in place by the settlement agreement. What we believe Judge Sullivan should have done, and we argue that it was an abuse of his discretion to, in his Rule 23 analysis, he abused his discretion in that if you read his opinion, the one that we appeal from, his analysis is very sparse as to whether or not the addendum was fair, reasonable, and adequate. And we believe that because Judge Sullivan gave what we see as a cursory once-over, saying that he believed that the terms of the addendum were fair, reasonable, and adequate, that he missed an opportunity. And particularly, he did not apply the analysis and the reasoning that this court set out in Democratic Central Committee. In Democratic Central Committee, this court was faced with the issue of what to do with a fund, a judgment fund. And what the court first did was it considered whether or not it could identify those who were injured. The problem with Democratic Central Committee was that those who were injured had ridden buses 25 years ago, and it was certainly hard, if not impossible, to identify them. Secondly, the court considered whether or not it was economically viable to, in fact, distribute the funds to the individuals. And the court concluded that because there were likely to be so many, the recovery would be of a minuscule amount, and therefore it did not meet the economic viability. They also considered whether or not it was logistically feasible, which goes back to whether or not they could identify and notify those people who were entitled to the funds. But here, we have a different problem, don't we? Yeah. Because we have claimants who are identified, but they've also been compensated. That's correct. They have been compensated under the settlement agreement. There's case law that says that simply because one is compensated to the amount that they agreed in the settlement agreement does not mean that they have, in fact, been fully compensated. And what the sister circuits have done in cases where there are side prey leftovers is that they have considered, I think, what is consistent with the analysis that this court used in Democratic Central Committee. They first analyzed whether or not they can readily identify those who are injured and who should be compensated, whether or not it is economically viable and economically feasible to, in fact, distribute the money to them. The other consideration is whether or not they have been fully compensated. Here, while you have people who have been compensated, it is clear that they have not been fully compensated. The settlement agreement, by its very nature, is a compromise of not only the issues, but of the- It's a compromise. It's also a release. That's correct. That's correct. But how does a district court judge get around the requirements of the settlement? You're talking as if there are no contractual, so to speak, terms that bind the district court judge. The district court doesn't have a freewheeling mandate to just look at what he or she thinks would be fair. So their side prey is part of the agreement, and the addendum requirements are part of the agreement. The district court judge doesn't have the authority to just do as he sees fit. That's correct, but the district court judge does have broad, equitable authority. And if you look at- No, no, no, I'm not sure. I mean, I hear you, but I'm not sure where that's coming from. Broad, equitable authority to say, no matter what you bring me, I think the right result is this, and this is what I'm going to impose? The court does not necessarily have the ability to change the terms of the contract. Right. And that is not what we're suggesting here. If you look at the contract as a whole, which the court must do when applying the Rule 23, fair, reasonable, and adequate analysis, the court can say, well, the intent of the parties was, first of all, to compensate those who were injured. Can't the court also say the intent of the parties was that the agreement couldn't be modified unless all parties agreed to it? Well, that's what they said here. They said that the agreement could not be modified unless all parties agreed to it. And that's part of- So then why isn't that just as important as any other language in the contract? Well, we believe that it is. And part of our appeal is that Mr. Mandan, our client, did not agree, and he is defined as a party under the settlement agreement. Wouldn't you be changing the terms of the contract, though, if you change the PSY CREA provision? I mean, I think, if I understand your argument, it is that the appropriations clause would not permit payment to non-injured parties, right? Well, that's correct, and that's a slightly different argument. The first argument is that the PSY CREA provision is actually a contingency. The parties would argue now, which I think is a bit of revisionist history, that, oh, well, we planned that there would be a leftover, and so we put this PSY CREA provision in there so that any leftover would be used ABCD in this manner. In fact, PSY CREA is a ministerial tool. It's often used for the contingency that there would be residual funds. But in a class action settlement, there's always leftover. That may and may not be true. Because if the ALI principles, which I think are consistent with the analysis that this court made in Democratic Central Committee, if that is carried forward and the court looks at whether or not they can compensate those who are injured first. But you're not really addressing our concerns. The agreement is PSY CREA. Now, there is an agreement you can amend. There's a dispute over whether you have to have unanimity or not. That's a different question. It seems to me, just so you understand, at least I'm concerned with this, that this court judge's hands are pretty much tied. You could win on what his first thought was. It's not binding law of the case, but his first thought was you had to have unanimity. I suppose we could look at the contract and say his first instinct was probably right, so he couldn't approve it without unanimity. But I don't know how you can claim anything more. All you'd get was a remand to the parties to say, well, if you want to have an addendum, you'd better all be unanimous. But this court judge can't frame it. What I suggest is that if this circuit is going to be consistent with the other circuits, the first circuit in Lupron, the third circuit in NRA Baby Products, the eighth circuit in NRA Bank America, they were not bothered by the fact that there was a PSY CREA clause in the settlement agreement. What they looked to were the equities of the situation. And in those cases, what the court said was the courts had broad, equitable authority to look at the equities of the situation. To ignore the PSY CREA? They did not ignore the PSY CREA. What they did was they said, can we, in fact, identify those who were injured and distribute the money to them before honoring what is a contingent part of the contract, that if there is a residual, then the money would be used X, Y, and Z. And so I think what we have to do is look at what PSY CREA is and where it comes from. PSY CREA is a tool that was used in Estates and Trusts, and it still is. And when it is used, did those cases have PSY CREA in the settlement agreement? I don't recall that. I mean, I think, I understand what you're arguing about, but I'm still faced with a situation where there's a contract that requires PSY CREA, unless there's an amendment, and then there's a question as to whether or not the amendment has to be pursuant to a unanimous agreement or a majority. But I don't read those cases to say what you're saying. I understand. And the point I'm trying to make is this is exactly why PSY CREA is disfavored. And this is why Justice Roberts – I don't see any cases that say that PSY CREA is unlawful. And – So you're asking us to do something that's never been done. No. No, I'm asking you to do something that's very consistent with what's being done – But these cases don't have PSY CREA as part of the settlement. Well, I believe they do. Well, I mean, I'll go back and look at them. I did not see the court ignoring the settlement agreement requiring PSY CREA. And if you're right, I'm certainly happy to be informed. Well, I will say that in Ray Bank America, what the settlement agreement did was it left to the court's sole discretion. Yeah, you don't have that. What the distribution was. But that would be great for you. Then you'd have a terrific argument. That's exactly what we don't have here. In Ray Baby Products out of the Third Circuit 2012, the settlement agreement did contain a PSY CREA provision. And what the court said in that instance – and the reason I go to In Ray Baby Products is because I think it's very analogous to this case. Because in In Ray Baby Products, there was a PSY CREA provision. And In Ray Baby Products settled. They had the fairness hearing. And the distribution process was in process. And the judgment was made final. Well, at the end of the distribution plan or the distribution process, there was $3 million left going to the injured parties and $18 million going to PSY CREA. And what the judge said was, and consistent with this case, is that the district court, in applying the Rule 23E analysis as to whether or not the settlement agreement in the distribution plan was fair, reasonable, and adequate, lacked the requisite facts to make such a decision. Here, this court also lacked the requisite facts because the judgment was final before the distribution process even began. And once the distribution process began, you have a result where more than half of the settlement fund is left over and is not being distributed to the people who are injured. Do you think it makes a difference here that the defendant here is a governmental entity? I thought that was the point of the Appropriations Clause argument. Yes, it does make a difference. What makes a difference is that the money originates out of the judgment fund. And the judgment fund limits what the money can be used for and who can actually receive the money. And who can receive money under the judgment fund are those who have claims against the government. And it's axiomatic that the government cannot accomplish indirectly what it cannot achieve directly. And what it is attempting to achieve indirectly here is the distribution of a huge sum of money to charities who don't have a claim against the government. There's lots of problems with your argument, but the two most prominent ones are you didn't make it to the district court and you agreed to this procedure in the first place. Right. To address whether or not we addressed it in the district court, we did object to the settlement agreement. I'm sorry, we did object to the addendum to the settlement agreement. It is clear in Mr. Mandan's objection that we prepared for him that what we opposed was the fact that this court could not use monies from the judgment. We did not mention judgment fund, but we said that it was clear that the monies could not be used to pay individuals who did not have claims against the government. And as far as notice of that argument is concerned, Judge Sullivan stated precisely the same thing. In his July 2015 opinion, he said that the courts would be well to look at whether or not monies from the judgment fund could be used for this purpose, which means to give it to charities. So that the court and all the parties I think were on notice that this was an issue that was raised and we believe that we sufficiently preserved it for argument here. So I am out of time unless there are more questions, but I would like to respond if the court has any. But the judgment fund wasn't a problem at the settlement. It's only a problem if there's too much money going out. Well, and I don't think it really is based on the amount of money, although the amount of money does get one's attention under this circumstance. But the judgment fund is a novel argument. I don't think that it's ever been raised. And so from a practical matter, at the time of the settlement agreement, who would raise objections to the judgment fund? It would be those parties who were involved in the settlement agreement in the first place. The problem is the reason it's not raised. There's so many complications with it. And you can turn it, I can turn it on your head by saying if you apply the argument all the way through, the argument can be made that those who have already received what the court and the parties determined they were due pursuant to this litigation cannot claim they're entitled to more, and therefore to give them more would violate the judgment clause. I just don't think the argument plays out. They got what they were entitled to get. And an argument, using your argument, you could say, just like the charities that you're opposing, you could say the individual is not entitled to any more either, because that individual got what we determined that individual was entitled to get. I mean, apart from the fact you never raised it, I think there are good reasons why not to raise it, because it's just never been applied this way, and no one so far as I can tell, including the Third Circuit, has said that SIPRE is an impermissible disposition of funds. I can look at that Third Circuit case. I'm looking at it now. It's not saying what you're suggesting. Our argument is not that SIPRE is an impermissible distribution of funds, but we're saying that it is when those funds originate from the judgment fund, because in order for funds to originate from the judgment fund, which is an appropriation, it has to be specific. An appropriation has to have a purpose. To an aggrieved party who's within the bounds of the claim, right? See, that cuts against you. If you follow through on your argument on the judgment fund, I just don't think it works for you. You're saying you can't take any of this money except to give it to an aggrieved party to the limits of that aggrievement. Well, these parties have already been given their disposition. I would suggest that the court take a look at the cases that we cited from sister circuits, which have judgment fund. I'm sorry, they don't have judgment fund, but they do have SIPRE situations in them, in which the plaintiffs have been compensated according to what they agreed to in the settlement agreement. Let me ask you this question. Do the plaintiffs have a claim against the United States? Currently? Yeah. Right now, today, as of this moment. Which is part of what I'm trying to raise. There's a lawsuit filed right now that claims that the government violated the Administrative Procedures Act by using the judgment fund precisely in this way. Because the judgment fund, by our interpretation, and this is a novel argument, is not designed. I'm talking about these plaintiffs in this case. Right. No, they do not. These plaintiffs. Because they released their claims. They released their claims. But. Then as Judge Edwards is saying, you're chasing your tail here. Right. You're just going around in circles. Your argument kills your point. Your judgment fund argument, if it's right, means you lose. These people have no claims. Your argument is it would violate the judgment fund to give them any more money. They've released their claims. They're done. It would not be in violation of the judgment fund to give them the money that they deserve for the claims which they alleged in the original lawsuit. That's a tough one. That is a very tough argument. I hear you. Thank you, Your Honor. If there are no more questions. All right. Thank you. Good morning. May it please the Court, I'm Joseph Sullers. I represent the plaintiff class. With me at counsel table is counsel for Mrs. Keefe Siegel. We believe that this court is faced with, and the district court was faced with, a very narrow choice. Either to live with and approve the leave in place, a SIPRE provision that nobody liked anymore because they thought the circumstance had changed and it was no longer going to serve the best interest of the class, or approve the addendum that was proposed and ultimately adopted by the court. Those are the two choices that were before the district court. We think those are the two choices that are here. My colleague raises an argument in which they would like a third choice, which is to ask to have this court direct the district court to rewrite the agreement. And we believe that this court's precedent, and by the way, I can go through these other cases. They support the position that we take here. They do not authorize district courts to rewrite the agreement. But the agreement itself has a provision on how it can be modified. Yes. And that provision doesn't seem to have been complied with. With all respect, I disagree. Let me go through it with you. The agreement says that it requires the approval of the parties. The question is, who qualifies as the plaintiffs? There's a provision that says the plaintiffs are the individual plaintiffs named, the members of the class, and the class representatives. Now, that provision was drafted with the purpose in mind of ensuring that those people's claims would be extinguished as part of the release in the case. But you didn't define parties to mean one thing in one circumstance and a different thing in another circumstance. There's one definition of parties and plaintiffs. Right. We do not have a separate definition of plaintiffs. So how can you use one definition at one point in time when you're analyzing the settlement agreement and a different definition that is made up out of whole cloth at a separate time? Because we believe that the purpose of the agreement, ultimately, has to be read through the prism of the entire scope of Rule 23. Well, why isn't the purpose of the agreement to make it really, really hard to change the settlement agreement, that everybody has to agree before there can be a modification? Well, first of all, the actual membership of the class is not known. So if that were the reading given to it, and Judge Sullivan rejected that reading, that would in effect mean there is no, it would define, it would mean that modification is impossible. And that clearly was not the intention of the parties. Well, couldn't parties put in a settlement agreement, this agreement can't be modified under any circumstances by the party? It certainly could, but that's not what this agreement said. Well, I mean, you're saying that it would be absurd for that result to be the case here, but that provision isn't absurd, right? I'm sorry, what provision? It would result in the exact same outcome. I'm sorry. The provision that said this settlement agreement can't be modified. Oh, certainly if the agreement said the provision, terms of the agreement are not subject to modification, that's a perfectly permissible provision. And if the parties had put that in here, there would be no opportunity to revise it. And that provision isn't inherently absurd, right? That provision is not inherently absurd. I'm sorry, I didn't mean to suggest any provision was inherently absurd, but that the interpretation of this provision as necessarily requiring the consent of every class member is inconsistent with the provision later that says that there's an opportunity to modify it, because the membership of the class is unknown. So we would be depending on members of the class who are not, that can't be ascertained in order to determine whether, in order to approve a modification of the settlement. What's the majority as opposed to unanimous that we're talking about? I'm sorry, majority? We're talking about you need majority consent? You need consent from someone, right? Yes. So how are you counting? We're not counting. What we have proposed and what the district court approached, the way it approached it is that this term has to be read from the perspective of what Rule 23 contemplates, what this court's decision in Thomas against Albright contemplates, what the advisory committee rules, Rule 23 contemplate, which is that the court consider the views of the recommendations of counsel for the class, along with the named plaintiffs, and any other members of the, actually members of the class who wish to be heard. And the court held a full day hearing and gave all absent, all class representatives an opportunity to submit comments and to submit their positions. So your argument is simply that the contract does not say, and I think you're adding it would be absurd to say it, the contract does not say there cannot be an amendment unless every effective party agrees. In this context, I think that's an unreasonable reading of this agreement. I recognize Judge Wilkins' position and agree that had the agreement said, under no circumstances may the terms of this agreement be modified, that would be a permissible term of the agreement. No, no, no. I understand. That's not really my question. I'm trying to understand what you mean to say about how a proposed amendment can be effectuated. Who can object? How many does it take? The district court initially thought unanimity was required. Unanimity among whom? Yeah. Well, the district court did its own interpretation the first time around and said it recognized that to require the consent of all the class members is impossible. Right. And, therefore, it read that out of the provision and instead said, but I do think it requires the consent of all the named plaintiffs, which was not there available at the time and rejected on that basis. Why isn't the, just as reasonable to say, all the known class members? Well. I mean, if they're unknown, they're unknown, but to the extent that you know who they are, then you send a notice to them and see if any of them object. Well, first of all, they were all informed of the proposed settlement. There was a full day hearing. Some came in and expressed their support of it. Some expressed their opposition to it. But what they said, no one, I should add, came in and defended the original CyPray provision. Nobody proposed to keep that in place. Those who objected wanted the money for themselves. They were successful claimants and they wanted what Mr. Mandin is asking for. That is not, nobody came in and said, oh, we really like the process. I understand that, but the motion that was on the table was this particular addendum. Correct. And if all of the plaintiffs who were known were notified of it, and one comes forward and says, I object to this addendum, why isn't that just a reasonable way to decide that then the addendum can't be approved? Perhaps a motion under Rule 60 could be made, but we can't proceed under this fashion. Well, first, I'm sorry. Rule 60 motion was made and rejected, I think ultimately properly so, and nobody is appealing from that portion of the decision as I understand it. But what Judge Sullivan did, I think properly in his second opinion, is he looked at this consent provision through the prism of the representational nature of class actions and concluded that it would be improper, and both the Rule 23 and this Court's jurisprudence in this area do not authorize a single individual to hold up what the Court may otherwise conclude is in the best interests of the class, which the Court ultimately found. What did it take to approve the original settlement? I think simply for the Court to find it was fair and reasonable. No, no, I mean, who reached it? I'm sorry? There was a unanimity? No, no, no, no. The negotiation was done with class counsel and the USDA. And it's governed by the standards in Rule 23, right? Correct. All right. It was done with the input of the class representatives. We gave very full notice to everyone before the fair decision. But there was no unanimity requirement? No unanimity requirement. There was no polling done that would ascertain that. So the question is, does Rule 23 govern what the District Court can do at this point, or does the instrument govern what the District Court can do at this point? Is that really what this point is down to? Well, not entirely, because I think that we're dealing with an agreement that was the subject of an approval by the Court back in 2011. In order for the Court to approve it, it must have approved it within the confines of what was required of Rule 23. Otherwise, it would have acted outside the scope of its authority. AMCM certainly makes clear that courts cannot, on their own, adopt rules that are inconsistent with Rule 23. We argued, and the Court ultimately agreed, that the interpretation of this definition of parties and the plaintiffs has to be read from the perspective of what Rule 23 permits. Rule 23 does not permit a single individual to hold up an entire agreement if the Court otherwise finds it fair and reasonable to the class as a whole. That is what we think the logic of the rule is. So it would be unlawful or ultraviaries or in violation of the Federal Rules of Civil Procedure or the settlement agreement to have said, if any class member who is known lodges an objection to a modification to the settlement agreement, then that modification cannot be approved. I think that would be at odds with the logic and probably this Court's general jurisprudence in Rule 23. So if that were in the settlement agreement and it came up to us when reviewed, we would have to strike that down as in violation. I'm sorry. I think what I would argue is that the Court could not interpret that literally. What I would suggest is the Court do, which is what the District Court below did, is to interpret it in the context of Rule 23. You see, it doesn't follow, because you're talking about a different situation now that Judge Wilkins is racing with you. You have a default. If the parties agree and the agreement is accepted, you've got to have every single person. That's their agreement. The District Court's responsibility would say, you can't produce every single person. You lose. We go back to the default. I'm enforcing the agreement that has already been approved. That's not troublesome. Yeah. I'm sorry. You're absolutely right. If the agreement is actually clear that it requires an identifiable group of people, the consent of each one of them, while I think that would be inconsistent with the spirit of Rule 23, it's probably permissible. Assume it's approved. Right. If it's approved, then obviously we're bound by it now. You're bound by it. Right. But my point is that this agreement treats an interpretation of it, what Judge Sullivan originally viewed it. Well, Judge Sullivan adopted a hybrid, because he recognized, as he had to, that the agreement couldn't be read literally, this particular term couldn't be read literally, because the membership of the class is unknown. So he discarded that term, said that's impractical. Chose to treat the rest of this about the named plaintiffs as required and found the unanimity of the named plaintiffs lacking. This issue was raised during the hearing with no prior notice, so we had an opportunity afterwards to renegotiate the agreement, which resulted in the addendum that's before this Court now, and to brief the District Court on the representational, reminded of the representational nature of class cases, and why if it already concluded that the definition of plaintiffs was impractical, because it already chose to treat one portion of that definition as not something that should be honored in this agreement, that therefore the entire provision, we think, has to be viewed through the representational nature of class actions, and that no single individual can come forward and say, I'm holding up the entire deal, if the Court finds, after taking into account those individuals, including Mr. Mandin's views. And so how is that consistent with Pickford and what we've said before about district judges not having free-ranging authority to just modify consent decrees? Well, I certainly agree with you. I would have to say that under the circumstances here, Judge Sullivan only treated this provision as ambiguous, and that therefore he had to interpret it, because the terms, by the way that the literal interpretation of them is an impossibility, and it is inconsistent with clearly the party's intention to allow for a circumstance where the agreement can be modified. Do we review that, De Novo, the interpretation of the agreement? I think you do. No. Interpretation of the agreement? Well, that's what we're talking about. No, no, no. I understand. I'm just thinking about it. To the extent it's a, I would think it's probably a question of mixed fact and law. That is, it's an application of a legal principle to this factual circumstances here. You're a good fudge. Well, thank you. I'll take my compliments where I can get them, right? I would like to go back to the discussion that we were having when you came up today. Yes. It had to do with the appropriations clause. Yes, I'm happy to address that. And the conversation that was going on then was, well, if these claimants, these parties have, in fact, been compensated, and so there is no longer any claim, they could not get more from this CyPRAE award. If, in fact, the existence of a claim is what's pivotal here, why then do the non-injured parties who would be beneficiaries of the CyPRAE award have the right to this money? Right. So, first of all, let me speak to that in several respects. As you know, the Department of Justice filed a brief, and I assume you've read it, but I want to defer to their interpretation of the Judgment Fund Act. Let me make clear my understanding and our understanding of the Judgment Fund Act, because I think it's been misinterpreted by counsel. It requires that claims be used to satisfy claims as to which the United States may have liability and for which no other statute authorizes funding. It does not limit, very importantly, it does not limit the use of those funds. It addresses what claims needs to be satisfied, not how the funds are used. But that said, I want to add something here, which is that the funds that are being used here under the trust that's been proposed would fund a trust that would be used to fund nonprofit groups for the purpose, for the benefit of Native American farmers and ranchers. That is, this is not as though we're giving the money to some organization and they're going to hold a wild party and say this was a great deal. They're going to be using it to serve the very community whose members are members of this class. I understand that that is the goal of what's happening here. Okay. But the difficulty that I'm having is how, then, do you distinguish that from a special appropriation? In other words, you're carrying out policy, essentially, that you think is to the benefit of this class, but the settlement fund is set up, presumably, to pay claims. And these are not claims in that sense. I'm sorry. I didn't interrupt you. First of all, let me make a point that's been made before, which is that the original settlement agreement, which was approved by the court and from which there was no appeal, had the SIPRE provision that expressly said, if their money is left over, they will be used to fund nonprofits that have served Native American farmers and ranchers. So that issue was before the district court. It was approved. There was no appeal. I know that it was. Okay. Forgive me. I just wanted to make that point. I'm not taking issue with that. All right. I think there's a different question. I understand. Which is whether a district court could at any time approve something which actually violates a statute or the Constitution. In other words, wouldn't it be wrong? I would hope not. The way you frame it, I would certainly hope that a district court would not be empowered to do that. But I don't think the district court did that here. Okay. Because you don't agree with the analysis of how the Appropriations Fund and the Judgment Fund works. Well, I'm not an expert on the Appropriations Process or the Judgment Fund, but I've looked at the statute, the Judgment Fund statute and the regulations that implement it, and they make no mention whatsoever of any limitation on the use of the funds that are paid to satisfy a claim. They're very particular about the nature of the claim that can be satisfied and the representations have to be made to assure that the liability of the United States is imminent and that it's a settlement and it's binding and it's final and those kinds of things. So the way that you read this is if the government agrees to a settlement fund, say it's $700,000, and they set up a claims process, and then as a result of that claims process, 1% of that $700,000 goes to the claimants. The other 99% then is available just to be provided for whatever kinds of programs the class counsel or whoever is left in charge by that settlement agreement wants to give the money to. Well, Your Honor, I would say that's an improper use of cypre. I would not characterize that as something that's at odds with the letter or the regulations of the judgment fund. The cypre doctrine, and I think it was properly used here, is intended to permit the distribution of the funds to interests that are as close as possible to the interests of those who brought the case. So I think if I understand your point. Okay, let's say that they did that, that they provided it to interests as close as possible to those who brought the case. But in fact, we have claimants who only use 1% of that fund, and the other 99% then is available to those other interests. And I think the important thing here is that the funds that are paid, including the 99% and the 1%, were all paid to satisfy actual claims of the class. They were paid in order to extinguish those claims against the United States. Well, the statute says judgments, awards, and compromised settlements. Yes. So exactly. So that the statute recognizes, as we all know, most cases end in settlements, that a judgment fund can be used to pay to satisfy claims in which the resolution is a settlement. The key is that the claim be one for which the United States could actually be liable, and the settlement is binding and final. And I don't read the statute, and Judge Edwards, you're looking at it now, but I don't read the statute or the regulation as speaking at all about the particular use. Having said that, Judge Brown, your example would trouble me greatly if it was simply a matter of distributing the money to whatever I thought was a good idea or whatever the court even thought was a good idea. The goal here is to serve the community that are members of the class by another means. And in this instance, let's say the 99% in your example, I presume the reason the funds were paid for that 99% group was because the Justice Department would have concluded that there was actual liability exposure for those claims and therefore justified payments for those to satisfy those claims. The fact that the claimants never claimed the money does not change the fact that the money was properly expended from the judgment fund. The key then is up to the district court to ensure that the funds are distributed appropriately to serve the same interests as the class had. Unless you have further questions, I realize my time has long expired and I apologize. Thank you. Okay, I understand that you used up all your time. I am out of time and I knew I was out of time. Thank you, Your Honor. Just in closing, in-rate baby products is a case that has a site-prey provision and the court applied what is commonly known as the ALI principles or analysis. In terms of the judgment fund, we do disagree on the interpretation thereof in that the purpose of the judgment fund historically was to allow the government to swiftly pay claims and settlements. Here what you have is what in fact the judgment fund was set up not to allow. Historically, when claimants had to wait for Congress to make an appropriation, congressmen, senators would pork barrel settlements. Instead of doing that, the judgment fund was set for the specific purpose of settling claims that could result in imminent litigation. And that is where we see this now. So is it your position that a proper interpretation of the judgment fund would be that in a class action settlement, instead of a site-prey provision, there has to be a provision that says that if there is any money left over after the claims time period has completed and all appeals, et cetera, have been addressed and adjudicated, that money has to go back to the treasurer? That that's the way that settlement agreements would have to be written? Not necessarily. I think settlement agreements are written all the time. It says if there's money left over, then there can be an additional distribution to those who were injured if they were not fully compensated. So it's either that or it goes back to the treasurer. I also believe that the settlement agreement could be written to say that if there is a site-prey left over, then the government and the parties need to get approval from Congress. It is an additional appropriation. And, in fact, the Department of Justice has done just that. I think in cases like Cobell, where they were authorized to pay a third party, they got the appropriation from Congress. And I think that's the proper use of the judgment fund, and this government knows how to do that. Thank you. Thank you. The case will be submitted.
judges: Brown, Wilkins, Edwards